IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DXP ENTERPRISES, INC., | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. H-14-1112 |
| | § |
| GOULDS PUMPS, INC., | § |
| | § |
| Defendant. | § |

**MEMORANDUM AND ORDER**

Goulds Pumps, Inc. ("Goulds") invoked the arbitration clause in the Distributor Agreement it signed with DXP Enterprises, Inc. ("DXP"), seeking an order from an arbitrator allowing it to terminate the Agreement. DXP sued Goulds in state court, seeking a preliminary and permanent injunction to prevent Goulds from terminating the Distributor Agreement and to stay the arbitration. The state court judge denied DXP's claim for a preliminary injunction, and Goulds timely removed to federal court.

Goulds now moves to dismiss DXP's claim for a permanent injunction, contending that this claim must be arbitrated. (Docket Entry No. 9). At issue is a provision within the arbitration clause the parties signed allowing either party to apply to a court for equitable remedies "notwithstanding" the requirement to arbitrate. The court held oral argument on the motion.

Based on the pleadings; the motion, response, reply; the arguments of counsel; and the relevant law, this court grants Goulds's motion to dismiss or to stay, (Docket Entry No. 9). The reasons are explained below.

**I.  Background**

In July 2010, DXP, an industrial equipment dealer, and Goulds, a manufacturer of pumps, parts, and accessories, signed a Distributor Agreement. The Agreement gave DXP the right to sell and promote certain lines of Goulds products, including API oil and gas pumps. Section 7.C of the Agreement prohibited DXP from selling or promoting products that competed with the Goulds products covered by the Distributor Agreement. (Docket Entry No. 9, Ex. 1, Distributor Agreement).

The Distributor Agreement contained the following arbitration clause:

> Any controversy or claim arising out of or related to this Agreement or the breach thereof shall be resolved if possible by negotiations between Manufacturer and the Distributor during a ninety (90) day period from written notice of the claim or controversy. If such negotiations do not resolve the controversy or claim, then the claim or controversy shall be finally settled by conciliation or arbitration, commenced within one hundred and twenty (120) days after the expiration of the ninety (90) day period, in the English language. Conciliation or arbitration shall be held in New York City, United States of America, at an office designated by the American Arbitration Association, conducted by a conciliator or arbitrator knowledgeable about commercial contracts and business law appointed under the Commercial Rules of the American Arbitration Association who will conduct the conciliation or arbitration in accordance with the governing law of this agreement. Judgment upon an arbitration award may be entered in any court having jurisdiction or application for a judicial acceptance of the arbitration award or an order of enforcement as the case may be. Costs of arbitration shall be borne equally by the Parties. Notwithstanding the foregoing, either Manufacturer or Distributor may apply to a court of competent jurisdiction for the imposition of an equitable remedy (such as a Restraining Order or Injunction) upon a showing of the elements necessary to sustain such a remedy.

(Distributor Agreement at Section 23).

The Distributor Agreement allowed Goulds to terminate the Agreement with or without cause after written notice given 90 days in advance. (Distributor Agreement at Section 17). It also

allowed Goulds to terminate the Agreement if DXP failed to comply with its obligations and did not cure its breach within 10 days after receiving written notice of the violation. (*Id.*).

In 2013, Goulds informed DXP that it would begin selling its API oil and gas products directly to customers, rather than working with distributors. (Docket Entry No. 1, Ex. B, Original Petition at 3–4). DXP objected. DXP claims that, in response to its objections, Goulds agreed to remove API products from the scope of the Distributor Agreement and to allow DXP to sell and promote API products that competed with Goulds's lines. (*Id.* at 4). DXP also claims that Goulds has not consistently enforced the noncompete clause in its contracts with DXP and with other distributors. (*Id.* at 8–10).

On December 9, 2013, DXP announced it would purchase B27, LLC, a company that makes API oil and gas pumps. (*Id.* at 11). Goulds told DXP on December 13, 2013 that the purchase would violate Section 7.C of the Distributor Agreement. (Original Petition, Ex. C). Despite Goulds's objections, DXP went forward and purchased B27 on January 2, 2014. On January 16, 2014, Goulds sent DXP a letter stating that DXP had violated Section 7.C of the Distributor Agreement. (*Id.*, Ex. D).

On April 8, 2014, Goulds demanded arbitration before the American Arbitration Association ("AAA"), seeking an award declaring that it was entitled to terminate the Distributor Agreement because DXP had breached the noncompete clause. The arbitration is pending.

On April 15, 2014, DXP sued Goulds in state court, seeking a temporary restraining order and a preliminary and permanent injunction preventing Goulds from terminating the Distributor Agreement. DXP claimed that Goulds's attempt to terminate the Distributor Agreement violated the Texas Dealers Act, which requires 180 days' prior written notice and good cause to terminate

3

a distributor agreement. TEX. BUS. & COMM. CODE, § 57.001 *et seq.* (Original Petition at 4). Goulds disputes that the Texas Dealers Act applies. The state court judge held a hearing on April 22, 2014, and denied the injunction, finding that DXP faced no threat of irreparable injury because Goulds had agreed not to terminate the Distributor Agreement until the arbitration had conclusively resolved the contractual dispute. (Docket Entry No. 9, Ex. 2).

Goulds timely removed to federal court on the basis of diversity of citizenship. At a hearing, the parties informed the court that Goulds had agreed not to terminate the Distributor Agreement unless the arbitrator issued an award in its favor. Based on this stipulation, the court denied DXP's motion for a preliminary injunction and DXP withdrew its motion to stay the arbitration. (Docket Entry Nos. 14, 27). DXP's application for a permanent injunction remains. DXP argues that an order from the arbitrator permitting Goulds to terminate the Distributor Agreement would violate the Texas Dealers Act and cause it to suffer irreparable injury. (Docket Entry No. 24). Goulds has moved to dismiss or alternatively to stay DXP's claim for an injunction, arguing that it must be resolved in arbitration. (Docket Entry No. 9).

**II.     The Applicable Legal Standards**

The Federal Arbitration Act ("FAA") requires district courts to direct parties to arbitrate issues covered by a valid arbitration agreement. 9 U.S.C. §§ 3, 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The arbitrability of disputes is a matter of contract law; a court cannot compel a party to arbitrate unless the parties agreed to arbitrate the dispute in question. *See, e.g.*, *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998). A court asked to compel arbitration must first determine whether the parties agreed to arbitrate the dispute. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614,

625–26 (1985); *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). The court must consider validity — "whether there is a valid agreement to arbitrate between the parties" — and scope — "whether the dispute in question falls within the scope of that arbitration agreement." *Conegie*, 492 F.3d at 598. Both validity and scope are governed by the "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Federal policy strongly favors enforcing arbitration agreements. *Dean Witter Reynolds*, 470 U.S. at 217; *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Because of the strong presumption in favor of arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004); *see also Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) (per curiam) (noting the strong presumption in favor of arbitration).

A court must stay litigation of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. If a mandatory stay is not available under section 3, a court may exercise its discretion to stay litigation if it involves issues closely related to those subject to arbitration, as a means of controlling and managing the docket and to preserve the purpose of the arbitration. *See Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n.23).

"The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms . . . ." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011). The section 3 mandatory stay provision furthers this purpose by preventing a party from litigating a claim that it is bound to arbitrate. This typically

arises when a plaintiff sues a defendant over a claim subject to the parties' arbitration agreement. *See Mendez v. Puerto Rican Intern. Cos., Inc.*, 553 F.3d 709, 712 (3d Cir. 2009) ("Section 3 is drafted to fit the paradigm situation in which a motion for a stay pending arbitration occurs — a plaintiff brings suit on a claim involving an issue it is obligated to arbitrate under an agreement in writing with a defendant and that defendant seeks to stay the litigation pending arbitration."). If the plaintiffs were able to litigate a claim that was subject to arbitration, "the arbitration proceedings would be both redundant and meaningless . . . [and] thwart[] the federal policy in favor of arbitration." *Harvey v. Joyce*, 199 F.3d 790, 796 (5th Cir. 2000).

**III.    Analysis**

The issue is whether the provision allowing the parties to pursue an injunction permits DXP to avoid arbitrating its claim for a permanent injunction covering the same issues that Goulds seeks to arbitrate — whether DXP properly terminated the parties' Agreement.[1]

The provision states: "[n]otwithstanding the foregoing, either Manufacturer or Distributor may apply to a court of competent jurisdiction for the imposition of an equitable remedy (such as a Restraining Order or Injunction) upon a showing of the elements necessary to sustain such a remedy." This provision is part of a broad arbitration clause stating: "[a]ny controversy or claim

---

[1] Goulds has urged this court to reject DXP's request for a permanent injunction on the basis that DXP cannot show irreparable injury. To obtain a permanent injunction, a party must demonstrate that (1) it has achieved actual success on the merits; (2) it has sustained irreparable injury or there is no adequate remedy at law; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the injunction will not disserve the public interest. *See ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Because the court finds that DXP's request for a permanent injunction is arbitrable, it is unnecessary to consider the merits of the claim for injunctive relief.

arising out of or related to this Agreement or the breach thereof . . . shall be finally settled by conciliation or arbitration." (Distributor Agreement at Section 23).

"[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract." *Pennzoil Exploration*, 139 F.3d at 1067 (citing *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (comparing "relating to" language with "arising out of" language)). "Broad arbitration clauses . . . are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* An "arbitration clause that cover[s] disputes 'arising under' an agreement, but omit[s] reference to claims 'relating to' an agreement, cover[s] only those disputes 'relating to the interpretation and performance of the contract itself.'" *Tracer Research Corp.*, 42 F.3d at 1295 (quoting *Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)).

The injunction provision, while stating that a party may apply to a court of competent jurisdiction to obtain equitable relief "notwithstanding" the requirement to arbitrate, does not explicitly except claims for equitable relief from the scope of the broad arbitration clause. In construing these conflicting provisions of the arbitration clause, the court must respect "the parties' contractual rights and expectations" and read the clause as a whole "to give effect to all its provisions and to render them consistent with each other." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995).

DXP argues that the term "notwithstanding" suggests that claims seeking an injunction in a court are excluded from the obligation to arbitrate. The FAA does not permit such an expansive reading. Because the FAA favors arbitration, when a broad agreement to arbitrate binds the parties, and one party asserts that some claims are excluded from that agreement, "in the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Tech., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said <u>with positive assurance</u> that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650 (emphasis added).

A number of courts have concluded that language similar to that contained in the Distributor Agreement's arbitration clause and its injunction provision requires the parties to arbitrate claims for permanent injunctive relief when the disputes are otherwise subject to a valid arbitration clause. These courts have held that such language permits parties to apply to a court for temporary injunctive relief to maintain the status quo pending arbitration, but not to request permanent injunctive relief that would require the court to consider and decide the merits of an arbitrable claim. *See, e.g.*, *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1281–82, 1285 (9th Cir. 2009) (A provision stating that "[n]otwithstanding this agreement to arbitrate, the parties, in addition to arbitration, shall be entitled to pursue equitable remedies and agree that the state and federal courts shall have exclusive jurisdiction for such purpose" was "intended to apply only to claims designed to maintain the status quo between the parties."); *WMT Investors, LLC v. Visionwall Corp*, No. 09-

8

CIV-10509-RMB, 2010 WL 2720607, at *2–4 (S.D.N.Y. June 28, 2010) (provision stating that "in addition to and not in lieu of any damages sustained . . . [the plaintiff] shall have the right to equitable relief, including but not limited to the issuance of a temporary or permanent injunction or restraining order, by any court of competent jurisdiction" allowed the plaintiff to seek a preliminary injunction but not a permanent injunction while arbitration on the same claims was pending); *Clarus Medical, LLC v. Myelotec, Inc.*, No. 05-934, 2005 WL 3272139, at **3–4 (D. Minn. Nov. 30, 2005) (examining a provision stating that "[n]otwithstanding any provision of this section to the contrary, each party shall be entitled to seek injunctive and other equitable relief in any court or forum of competent jurisdiction to enforce the provisions of this Agreement," and concluding that "the Licence does not have the 'qualifying contractual language' that 'provides the Court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute.'") (citing *Manion v. Nagin*, 255 F.3d 535, 538–39 (8th Cir. 2001); *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 259 F. Supp. 2d 531, 538–39 (N.D. Tex. 2003) (interpreting language stipulating that "[the defendant] . . . agrees that [the plaintiff] shall have the right to apply to a court of competent jurisdiction for specific performance and/or an order restraining and enjoining any such further disclosure or breach and for such other relief as [the plaintiff] shall deem appropriate" to permit the court to consider a preliminary injunction to maintain the status quo pending arbitration but not to permit the plaintiff "to choose between a trial and an arbitration" by asking a court to grant permanent injunctive relief addressing claims subject to arbitration); *Baychar v. Frisby Tech.*, No. 01-cv-28-B-S, 2001 WL 856626 at *6–7 (D. Maine, July 26, 2001) (holding that a provision stating that "each Party shall have the right to seek and obtain injunctive relief . . . in addition to all of the rights and remedies available at law or in equity" permitted injunctions only to preserve the

9

status quo pending arbitration); *ESecuritel Holdings v. Youghigheny*, No. 4-02-0302-cv, 2012 WL 6030141, at *4 (Tex. App — San Antonio Dec. 5, 2012, no pet. h.) (analyzing an arbitration clause stating that "[n]otwithstanding anything to the contrary herein, neither Party is precluded from seeking injunctive relief in any court of competent jurisdiction for equitable remedies," and holding that "the arbitration clause's reference to injunctive relief and equitable remedies was intended not to circumvent arbitration but to allow the parties to preserve the status quo pending arbitration").

DXP is not requesting a preliminary injunction limited to preserving the status quo pending arbitration. Goulds does not believe that the injunction language in the arbitration clause should be interpreted to allow claims for preliminary but not permanent injunctive relief. Neither position is consistent with prevailing law interpreting similar language in arbitration clauses.

The question is whether the injunction provision is "the most forceful evidence" of a purpose to exclude the merits of a claim for a permanent injunction when the merits are properly before the arbitrator. *AT&T Tech.*, 475 U.S. at 650. The injunction provision here does not contain the kind of language courts have held strongly evidences the parties' purpose to litigate all claims for injunctive relief, even when the merits of the underlying claims are pending in arbitration.

Examples of such language are in the following cases:

- In *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, the parties' agreement contained an arbitration clause stating that "[e]xcept for an action seeking a temporary restraining order or injunction . . . any dispute, claim, or controversy arising out of [or] relating to this Agreement . . . shall be determined exclusively by final, binding arbitration." 555 Fed. App'x 153, 154 (3d Cir. 2014) (unpublished). The Third

10

Circuit found that the clause unambiguously excluded claims for both preliminary and permanent injunctions from the requirement to arbitrate. *Id.*

- In *SunCoke Energy v. MAN Ferrostaad Aktiengesellschaft*, the arbitration clause stated that "[o]ther than a claim for equitable relief, which may be brought to any court of competent jurisdiction, all disputes arising out of this Agreement shall be settled by arbitration." 563 F.3d 211, 213 n. 2, 3 (6th Cir. 2009). The Sixth Circuit allowed the plaintiff to assert its claims for injunctive relief in court. *Id.* at 213.

- In *Major Lindsey & Africa, LLC v. Mahn*, the agreement containing the arbitration clause stated that "[c]laims . . . seeking injunctive or declaratory relief . . . are not covered by this Agreement (although all other aspects of such claims, including any claims for damages, are covered by this Agreement)." No. 10-civ-4239(CM), 2010 WL 3959609, at *3 (S.D.N.Y. Sept. 7, 2010). The court held that the language excluded claims for permanent injunctive relief from the arbitration agreement. *Id.* at *4.

- In *Dickeys Barbecue Rests. v. Mathieu*, a case applying the Texas General Arbitration Act, the court analyzed a provision stating that "[n]ot withstanding the foregoing, [the plaintiff] may bring an action . . . for injunctive relief or other extraordinary relief . . . in a court having jurisdiction and <u>without first submitting such action to mediation or arbitration</u>." No. 3:12-cv-5119-G, 2013 WL 5268976, at *5 (N.D. Tex. Sept. 18, 2013) (emphasis added). The court found that this language excluded all claims for injunctive relief from the requirement to arbitrate. *Id.* at **6–9.

11

Arbitration agreements that lack such unambiguous language and simply state that parties can ask courts for injunctive relief "notwithstanding" an agreement to arbitrate do not sufficiently show that claims for permanent injunctive relief are nonarbitrable. Examples of cases reaching this result are set out below:

- In *Lawrence v. Comprehensive Bus. Servs. Co.*, the court rejected a claim that a similar "notwithstanding" injunction provision in an arbitration clause made the arbitration agreement illusory because it conflicted with the arbitration clause, and affirmed an order compelling the party seeking the injunction to arbitrate its claims for declaratory and injunctive relief. 833 F.2d 1159, 1064 (5th Cir. 1987).

- In *Clarus Medical*, the court held that language providing that "[n]otwithstanding any provision of this section to the contrary, each party shall be entitled to seek injunctive and other equitable relief in any court or forum of competent jurisdiction to enforce the provisions of this Agreement" was "insufficient to allow the Court to grant injunctive relief of the nature requested . . . without addressing the merits of the underlying arbitrable dispute." 2005 WL 3272139, at **3–4.

- In *ESecuritel Holdings*, the parties' agreement to arbitrate contained a sentence stating that "[n]otwithstanding anything to the contrary herein, neither party is precluded from seeking injunctive relief in any court of competent jurisdiction for equitable remedies." 2012 WL 6030141, at **3–4. The court held that the party's claims for permanent injunctive and declaratory relief were subject to arbitration. *Id.*

The language in the Distributor Agreement here does not clearly evidence an intent to allow litigation of claims subject to arbitration by asserting them as claims for permanent injunctive relief. The language is closer to the provisions courts have held allow litigation only of applications for temporary restraining order or preliminary injunctions needed to preserve the status quo pending arbitration of the merits, not attempts to displace the arbitration by allowing litigation of the merits through a permanent injunction. The strong policy and presumption favoring arbitration weigh heaving against such a result.

Goulds has demanded arbitration on whether DXP's acquisition of B27 is a basis for Goulds to terminate the Distributor Agreement. Goulds has asked the arbitrator to decide that the acquisition violated Section 7.C and to declare that Goulds may terminate the Distributor Agreement. DXP asks this court to decide that acquiring B27 did not violate Section 7.C and to enjoin Goulds from terminating the Agreement on that basis. Allowing DXP to litigate these claims would require this court to examine and decide the merits of the dispute subject to a valid arbitration clause and pending before an arbitrator. Case law from around the country supports denying this result. *See, e.g.*, *Haide Grp, Inc. v. Hyosung Corp.*, No. 10-02392, 2010 WL 4456928, at **3–4 (E.D. Pa. Nov. 8, 2010) (declining to hear claims for preliminary injunctive relief because the court "must be mindful not to supplant the role of the arbitrator in determining whether injunctive relief is appropriate"); *H2O To Go, LLC v. Martinez*, No. 05-21353, 2005 WL 2065220, at **4–5 (S.D. Fla. Aug. 22, 2005) (the "arbitration clause alters the authority of the Court significantly in deciding whether, and to what extent, a preliminary injunction should be entered"); *Baychar*, 2001 WL 856626, at *9 (declining to issue a preliminary injunction when doing so would require the court to rule on the merits of the controversy and would "usurp the role of the arbitrator"). An order from

13

this court finding that DXP had not breached Section 7.C and prohibiting Goulds from terminating the Distributor Agreement would moot the pending arbitration and deprive Goulds of its right to have an AAA-appointed arbitrator decide the merits of this dispute. *See also Subway Equipment Leasing Corporation v. Forte*, 169 F.3d 324 (5th Cir. 1999) (it was necessary to stay litigation of claims not subject to arbitration to protect the right of related parties to arbitrate their disputes; if one party prevailed in the litigation on related claims against parties not subject to arbitration while the arbitration was pending, the arbitration would be moot and the parties would be deprived of their contractual right to resolve the dispute in arbitration).

DXP's claims for permanent injunctive and declaratory relief must be submitted to arbitration. Under section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, "a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration . . . ." *Alford*, 975 F.2d at 1164. The Fifth Circuit has interpreted this language to mean that the district court cannot deny a stay when one is properly requested. *Id.* "This rule, however, was not intended to limit dismissal of a case in the proper circumstances." *Id.* If all of the issues raised before the district court are arbitrable, dismissal of the case is appropriate. *Id.* As the Fifth Circuit explained in *Alford*:

> Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe that the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.

14

*Id.* (quoting *Sea-Land Service, Inc. v. Sea-Land of Puerto Rico, Inc.*, 636 F. Supp. 750, 757 (D. Puerto Rico 1986)).

No later than November 21, 2014, the parties are to file statements of no more than 3 pages identifying any reasons this case should not be dismissed without prejudice in favor of arbitration.

SIGNED on November 4, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge